IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| KH, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-81 |
| | : | |
| VIRGIN ISLANDS WATER AND POWER AUTHORITY, et al. | : | |
| | : | |

<u>MEMORANDUM</u>

**Judge Juan R. Sánchez**                                                                             **March 28, 2025**

      Defendant U.S. Virgin Islands Water and Power Authority (VIWAPA) provides electricity service to Plaintiffs. VIWAPA contracted with Defendant Tantalus Systems, Inc. ("Tantalus") and Defendant Itron Networked Services, Inc. ("Itron") to replace VIWAPA's metering systems, funded in part by a United States Department of Agriculture (USDA) loan. As a result of the replacement, Plaintiffs allege they were overbilled for electricity and their electricity services were terminated or threatened to be terminated by VIWAPA for nonpayment. Plaintiffs sued VIWAPA, claiming VIWAPA violated their due process rights under the Fourteenth Amendment (Count I) and the False Claims Act (Count II). Plaintiffs also sued Tantalus and Itron for violations of the False Claim Act, a Virgin Islands consumer protection statute (Count III), and its duty to warn of a product defect (Count IV). Defendants have moved to dismiss the case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). VIWAPA's motion will be denied as to Count I. The motions will be granted as to all other Counts.

**BACKGROUND**

      VIWAPA is an autonomous governmental instrumentality that provides electric and water service to Virgin Island residents. Third Am. Compl. ¶ 1, ECF No. 158. VIWAPA "provides 100% of the electricity to residential and commercial customers." *Id*. ¶ 17. Plaintiffs are a group of

individuals and companies who are VIWAPA customers.[1] *Id.* ¶¶ 5-14. In 2014, VIWAPA contracted with Tantalus and Itron (collectively "Defendants")[2] to digitize VIWAPA's analog metering system. *Id.* ¶ 1. In the aftermath of this project, Plaintiffs allege VIWAPA overbilled for electricity service and terminated or threatened to terminate Plaintiffs' electricity service. *Id.* ¶ 4.

The purpose of the contract between Defendants was to replace VIWAPA's analog metering system with an advanced metering infrastructure (AMI) smart grid system that included digital meters. *Id.* ¶ 28. Tantalus operated as a general contractor for this project and Itron manufactured the digital meters. *Id.* ¶¶ 15-16. Defendants financed the contract with a $13 million loan from the USDA in 2014. *Id.* ¶¶ 28, 60. According to Plaintiffs, Defendants falsely represented the AMI smart grid system and its technological aspects to USDA to obtain the loan. *Id.* ¶¶ 28, 60. Specifically, Plaintiffs assert Tantalus and Itron provided invoices for "services not performed and faulty equipment" related to the AMI system to VIWAPA, which subsequently sent the invoices to USDA "to obtain approval for the release of funds." *Id.* ¶ 194. Plaintiffs assert Defendants certified to USDA the AMI system was installed properly and "functioning as contractually promised" but was actually "never fully functional," and VIWAPA concealed the fact the AMI system was never able to "reliably report electrical consumption data." *Id.* ¶¶ 46, 107, 188.

Defendants represented to the public the AMI smart grid system would save customers money because it "could eliminate the expense of meter readers" and allow customers to "monitor

---

[1] Plaintiffs are: KH, RV, Gordon Ackley, Johann A. Clendenin, Clifford Joseph, Annette and Dunel Mauvais, Catherine and Leonard Stephen, Gasworks, Inc., and Fruit Bowl, Inc. Third Am. Compl. ¶¶ 5-14. Plaintiff Jean Persad is no longer part of the case and her claims have been voluntarily dismissed. ECF No. 201.

[2] The Complaint also names Andrew Smith and John Does 1-10, which are a series of unknown entities, as defendants in this case. Andrew Smith was sued in his capacity as the CEO of VIWAPA, but he is no longer employed there.

2

their real time usage and conserve." *Id*. ¶ 57. VIWAPA customers were not allowed to opt out of the AMI system. *Id*. ¶ 58. VIWAPA claimed the AMI system would be operational by June 2015. *Id*. ¶ 60. Since the installation of the AMI system, VIWAPA "has sent, and continues to send bills to its customers that do not reflect their actual usage." *Id*. ¶ 47. According to Plaintiffs, this overbilling of customers is the result of the "non-functioning" AMI system, which has caused VIWAPA to "estimate" bills. *Id*. ¶¶ 24, 101. For example, Plaintiff KH used a generator for electricity in September 2021 instead of VIWAPA's service and still received a high-usage electricity bill for that period. *Id*. ¶ 110. Plaintiff RV received a high-usage electricity and water bill from June 2021 to July 2021, even though RV and his family were out of town. *Id*. ¶¶ 113-17. Plaintiff Ackley alleges he was overbilled thousands of dollars by VIWAPA for electricity service. *Id*. ¶ 121.

Public utilities in the Virgin Islands, like VIWAPA, are regulated by statute. *See* 30 V.I.C. The Virgin Islands Ratepayers' Bill of Rights codifies the rights of VIWAPA customers, including the recognition of public utility services as basic necessities and placing limits on billing and termination of services. 30 V.I.C. § 1a. In addition, VIWAPA sends a disconnection notice as part of each bill, warning customers of service disconnection if the bill is not paid on time. VIWAPA Mot. Dismiss 9-10, ECF No. 170. The disconnection notice includes: "If you have any question or believe that this disconnection notice is in error, you must immediately contact the business office either by phone or in person. The WAPA business office is open from 8 A.M. to 4 P.M. Monday through Friday on St. Thomas, St. John, St. Croix.".[3] Disconnection Notice, ECF No. 170-3.

---

[3]  The Court may properly consider the disconnection notice at the motion to dismiss stage because it is "integral" to the Complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation and internal quotation marks omitted).

3

Further, by statute, customers may present a dispute over billing to the Virgin Islands Public Services Commission (PSC) after failing to resolve it with VIWAPA. 30 V.I.C. § 23 ("A ratepayer may present a dispute to the Public Services Commission for resolution only after the public utility and the ratepayer have failed to resolve the dispute in a manner satisfactory to the ratepayer.").

Plaintiffs allege they attempted to resolve their billing issues with VIWAPA's customer service to no avail. For example, Plaintiff KH attempted to resolve his billing issue with VIWAPA and was told his service would be disconnected if he did not pay his bill. Third Am. Compl. ¶ 111. RV received the same response from VIWAPA. *Id*. ¶ 118. Moreover, VIWAPA actually terminated Plaintiff Ackley's service temporarily for failure to pay the disputed bill and continues to send him disconnection notices. *Id*. ¶¶ 121-22. According to Plaintiffs, VIWAPA "never disclosed any rules, policies, procedures, or avenues of relief" beyond their customer service. *Id*. ¶ 111. Further, Plaintiffs allege they did not present the issue to the PSC because the PSC does nothing to resolve billing issues, even though it has statutory authority to do so. *Id*. ¶¶ 53-54, 126, 167. According to Plaintiffs, the PSC "never provided the ratepayers with notice and implemented formalized procedures to resolve customer complaints." *Id*. ¶ 167. Plaintiff Clendenin, while serving as a commissioner for the PSC, "was beset with Virgin Islanders complaining about their bills," which were never resolved by the PSC. *Id*. ¶¶ 126-27.

Plaintiffs also allege the installation of the AMI system has made the Virgin Islands' electrical grid "more vulnerable to" cyberattacks by providing hackers with "additional points of access." *Id*. ¶¶ 65, 67. According to Plaintiffs, a potential cyberattack may cause a "long-term power grid blackout" that may lead to increased criminal conduct, affecting Plaintiffs' businesses and livelihood. *Id*. ¶¶ 225-30. As a result of this risk, Plaintiff Ackley has suffered "stress of

4

worrying about the safety and security of [his] homes and loved ones" and "incurred costs for alternate emergency energy sources (solar)." *Id.* ¶¶ 240-41.

Based on the foregoing, Plaintiffs filed this action against Defendants. Plaintiffs filed the Third Amended Complaint on August 21, 2024.[4] ECF No. 158. Plaintiffs bring claims against VIWAPA for violations of their Fourteenth Amendment due process rights (Count I) and the False Claims Act (Count II). Plaintiffs bring claims against Tantalus and Itron for violations of the False Claims Act (Count II), the Virgin Islands Consumer Fraud and Deceptive Business Practices Act (CFDBP) (Count III), and common law failure to warn of a product defect (Count IV).[5]

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the

---

[4] Plaintiffs filed the original complaint on December 3, 2021 (ECF No. 1), then amended it on June 16, 2023 (ECF No. 22), July 25, 2023 (ECF No. 35), and August 21, 2024 (ECF No. 158).

[5] Plaintiffs Ackley, Clendenin, Catherine and Leonard Stephen, Clifford Joseph, Annette and Dunel Mauvais, Gasworks, Inc., and Fruit Bowl, Inc. bring Counts I and III. Third Am. Compl. ¶¶ 157, 196, 212. Plaintiffs RV, KH, Ackley, and Clendenin bring Count II. *Id.* ¶ 176. Plaintiffs Ackley and Clendenin bring Count IV. *Id.* ¶ 217.

5

reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679). The court may also consider "exhibits attached to the complaint," "matters of public record," and documents "integral to or explicitly relied upon in the complaint" at the motion to dismiss stage, without converting the motion into one for summary judgment. *Schmidt*, 770 F.3d at 249 (emphasis, citation, and internal quotation marks omitted).

**DISCUSSION**

First, Plaintiffs bring a Fourteenth Amendment due process claim against VIWAPA under 42 U.S.C. § 1983 for terminating or threatening to terminate Plaintiffs' electricity service without notice and an opportunity to resolve customer complaints.[6] The Fourteenth Amendment forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV. "When a plaintiff sues under [Section] 1983 for a state actor's failure to provide procedural due process," courts employ a two-stage analysis, "inquiring (1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Id*. A procedure is

---

[6] In the Complaint, Plaintiffs assert violations of both substantive and procedural due process. Third Am. Compl. ¶ 173. However, the facts only allege a procedural process claim because Plaintiffs assert deprivation of a protected interest without adequate process and does not involve a "fundamental" interest under the United States Constitution. *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-141 (3d Cir. 2000) (holding that a plaintiff must be deprived a fundamental interest under the Constitution to state a claim for substantive due process).

6

unavailable if access to "the procedure is absolutely blocked or there is evidence that the procedures are a sham." *Id*. at 117.

Plaintiffs have a protected property interest in continuing water and electricity services provided by VIWAPA because the Virgin Islands Ratepayers' Bill of Rights, 30 V.I.C. § 1a, limits termination of service. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11-12 (1978) (finding customers of a public utility have a "right to continued service" because of a state law prohibiting at-will termination of service). Plaintiffs allege they complained to or attempted to reach VIWAPA's customer service to resolve the billing issues but were unsuccessful. However, Plaintiffs did not present their disputes to the PSC for resolution as provided by the statute because, according to Plaintiffs, the PSC did not have a formalized procedure to resolve the disputes. Further, based on Plaintiff Clendenin's experience as a commissioner for the PSC, Plaintiffs believed any such effort would be futile because the PSC did not resolve billing issues when it received complaints from VIWAPA customers. Viewing these allegations in light most favorable to Plaintiffs, the PSC resolution process was futile and VIWAPA did not provide with the required procedural due process under the Fourteenth Amendment before terminating or threatening to terminate service. Accordingly, VIWAPA's motion is denied as to Count I.

Second, Plaintiffs bring a claim against Defendants for violation of the False Claims Act (FCA), 31 U.S.C. § 3729, arguing Defendants knowingly falsely represented the functionality of the AMI system to obtain the $13 million USDA loan. The FCA imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). There are two essential elements of an FCA violation: "(1) the falsity of the claim and (2) the defendant's knowledge of the claim's falsity." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 747 (2023). With respect to the falsity element, "[a]

7

false or fraudulent claim may be either factually false or legally false. A claim is factually false when the claimant misrepresents what goods or services … it provided to the Government." *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 94 (3d Cir. 2018) (internal quotation marks and citation omitted). A claim "is legally false when the claimant lies about its compliance with a statutory, regulatory, or contractual requirement." *Id*. With respect to the knowledge element, "either actual knowledge, deliberate ignorance, or recklessness will suffice." *SuperValu Inc.*, 598 U.S at 750. To satisfy the particularity requirement for an FCA claim pursuant to Federal Rule of Civil Procedure 9(b), the plaintiff must "provide particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted. Describing a mere opportunity for fraud will not suffice." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 157-58 (3d Cir. 2014). The plaintiff must set forth "the who, where, when and how [] of the false claims and the defendants' role in them." *United States v. Select Rehab. Inc.*, 696 F. Supp. 3d 48, 65 (E.D. Pa. 2023); *see also U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 318 (E.D. Pa. 2012).

Plaintiffs fail to state a claim because the allegations do not provide any details of a scheme to submit false claims and rely on hindsight rather than contemporaneous sources. *See In re Newell Brands, Inc. Sec. Litig.*, 837 F. App'x 869, 876 (3d Cir. 2020) (finding plaintiff failed to allege any false or misleading statement because the allegations relied on "on hindsight rather than contemporaneous sources."). Plaintiffs allege factual falsity by asserting Defendants must have falsely represented the capabilities of the AMI system to USDA to obtain the loan because the AMI system ultimately did not function as advertised. To support this assertion, Plaintiffs claim Tantalus and Itron provided false invoices to VIWAPA "for services not performed and faulty equipment." Third Am. Compl. ¶ 194. Plaintiffs provide no details on the services that were not

8

performed or the alleged faulty equipment; only that the AMI system did not function properly so Tantalus and Itron must have knowingly presented false invoices to VIWAPA, which then knowingly submitted the false invoices to USDA to obtain the loan. Plaintiffs then allege legal falsity by asserting Defendants "expressly and/or implicitly certified" compliance with the USDA loan terms to continue receiving funds. *Id.* ¶ 194. Again, Plaintiffs provide no details about what compliance requirements Defendants may have certified to; only that Defendants must have certified to some unknown compliance requirements, and did so falsely, because Defendants continued to receive funds from the USDA loan. *See United States ex rel. Jackson v. DePaul Health Sys.*, 454 F. Supp. 3d 481, 499 (E.D. Pa. 2020) (finding "[i]t is not enough to allege that, based on the scheme described, 'claims requesting illegal payments must have been submitted, were likely submitted[,] or should have been submitted to the Government.'"). Because Plaintiffs conclusory allege a false claims scheme without details, Defendants' motions are granted as to the FCA claim.

Third, Plaintiffs bring a class action consumer protection claim under the Virgin Islands CFDBP statute, 12A V.I.C. § 331, against Tantalus and Itron. Under the CFDBP, "[a]ny person or business that is injured by a deceptive trade practice may bring a class action to protect the rights of Virgin Islands consumers for compensatory, consequential, punitive and equitable damages." 12A V.I.C. § 331. "[T]he standard of a deceptive business practice is an act which misrepresents, deceives, or unfairly influences a reasonable and objective consumer." *Id*. However, "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this territory or the United States" are exempt from the CFDBP. 12A V.I.C. § 333(a).

9

Plaintiffs' claim falls under the § 333(a) exemption. VIWAPA is an autonomous governmental instrumentality. *See* 30 V.I.C. § 1. VIWAPA approved the contract for the installation of the AMI system. Accordingly, Tantalus and Itron's motions are granted because this claim is exempt from the CFDBP.

Lastly, Plaintiffs bring a failure to warn of a defect claim against Tantalus and Itron, arguing they failed to warn of the risk of cyberattacks associated with the installation of the AMI system. "One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." Restatement (Third) of Torts: Prod. Liab. § 1 (1998); *Gerald v. R.J. Reynolds Tobacco Co.*, 2017 WL 5009691, at *34 (V.I. Super., Aug. 29, 2017) (adopting Restatement (Third) of Torts for failure to warn product defect claims in the Virgin Islands). A product "is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe." Restatement (Third) of Torts: Prod. Liab. § 2c (1998). Harm, in this context, means personal injury and property damage. Restatement (Third) of Torts: Prod. Liab. § 1 cmt. d. "Ordinarily, a mere risk of future harm or anxiety without physical injury is insufficient to establish legal harm." *Louis v. Caneel Bay, Inc.*, 2008 WL 4372941, at *5 (V.I. Super July 21, 2008).

Plaintiffs have not alleged a cognizable harm to state a failure to warn claim. Plaintiffs allege, in a conclusory manner, the installation of the AMI system was without "adequate cyber security" and increased the risk of a cyberattack on the electrical grid because of "additional points of access." Third Am. Compl. ¶¶ 67, 155. Plaintiffs then allege a cyberattack may potentially cause

10

a long-term blackout and lead to increased criminal conduct because "when the electrical grid is down, there is a dramatic increase in drug, weapons, and human trafficking coming through" the Virgin Islands. *Id*. ¶ 68. This potential increase in crime will affect Plaintiffs' sense of security and safety. The mere risk that this sequence of events may occur has caused Plaintiffs to incur costs by finding an alternate source of electricity and suffer stress and anxiety. *Id*. ¶¶ 230, 240-41.

Plaintiffs' theory of harm is far too attenuated to be cognizable. Plaintiffs provide no evidence to support the assertions that the AMI system is inadequately secure and installation of the system increased the risk of a cyberattack on the Virgin Islands' electrical grid. Plaintiffs' alleged injury to their security and safety is not imminent. *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (holding "[a]llegations of 'possible future injury' are not sufficient."). Further, Plaintiffs' alleged stress and anxiety are not "fairly traceable" to the installation of the AMI system. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 416 (U.S., 2013) (finding "[plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). Accordingly, Tantalus and Itron's motions are granted.

**CONCLUSION**

In sum, VIWAPA's motion is denied as to the Fourteenth Amendment due process claim and granted as to the FCA claim. Tantalus and Itron's motions are granted as to all claims.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.